UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WALKER RIVER PAIUTE TRIBE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; *et al.*,<br><br>    Defendants. | 3:08-CV-0627-LRH-VPC<br><br>ORDER |

    Before the court is defendants the United States Department of Housing and Urban Development ("HUD"); Julian Castro, the Secretary of Housing and Urban Development; and Jemine A. Bryon's, General Deputy Assistant for Public and Indian Housing, (collectively "defendants") motion for partial reconsideration of the court's December 15, 2014 order (Doc. #45[1]) granting in-part and denying in-part plaintiff Walker River Paiute Tribe's ("WRPT") motion for summary judgment (Doc. #18) and defendants' counter-motion for summary judgment (Doc. #22). Doc. #48. Plaintiff WRPT filed an opposition (Doc. #49) to which defendants replied (Doc. #50).

///

///

---

[1] Refers to the court's docketing number.

**I.   Facts and Procedural History[2]**

Plaintiff WRPT is a federally recognized Indian tribe located in Nevada. WRPT filed the underlying declaratory and injunctive relief action alleging that defendants improperly offset the amount of federal block grant funding WRPT received in fiscal year 2009 in violation of the Native American Housing Assistance and Self-Determination Act ("NAHASDA"), 25 U.S.C. § 4101 *et seq*. *See* Doc. #1. In particular WRPT challenged HUD's allocation of annual Indian Housing Block Grants ("IHBG")[3] pursuant to the funding allocation formula codified at 24 C.F.R. §§ 1000.304 - 1000.340. *Id*.

To determine the amount of IHBG funding a Tribal Designated Housing Entity ("TDHE")[4] receives in a particular fiscal year, HUD first calculates the tribe's Formula Current Assisted Housing Stock ("FCAS") (more commonly understood as the total number of assistance-based dwelling units owned or operated by the tribe) and multiplies that number by the national per unit subsidy. 24 C.F.R. § 1000.316. After calculating each tribe's FCAS, HUD subsequently measures the current "need" of all participating tribes by applying certain present weighted criteria to each tribe in order to equitably distribute any remaining IHBG appropriations. *See* 24 C.F.R. § 1000.324 (identifying seven (7) weighted factors as part of the need component). The tribe's annual IHBG is the resulting sum of both the tribe's FCAS calculation and determined "need."

A tribe's FCAS calculation begins with the total number of assistance-based dwelling units owned or operated by the tribe as of September 30, 1997. 24 C.F.R. § 1000.312. From this starting

---

[2] This action has an extensive factual and procedural history. For a more in-depth history of the controversy between the parties see the court's December 14, 2015 order on summary judgment (Doc. #45).

[3] Indian Housing Block Grants are formula based monetary grants designed to provide financial assistance for a range of affordable housing activities on Indian reservations and designated Indian housing areas. Eligible activities include new housing development, continued assistance to housing developed under the United States Housing Act of 1937 ("1937 Housing Act"), 42 U.S.C. § 1437 *et seq*., related housing services, crime prevention, and community safety.

[4] A Tribally Designated Housing Entity, like WRPT's housing authority, is an entity specifically designated by the Indian tribe to administer the tribe's housing programs.

point, HUD then eliminates certain housing units from the calculation. For example, over the years, some rent-to-own units are conveyed from a TDHE's inventory due to the terms of housing agreements between the tribes and the Indian families occupying the units. Reflecting these transfers of ownership, HUD promulgated a regulation in 1998 which allowed for a downward adjustment to each tribe's FCAS calculation once a unit has been conveyed to an Indian family. *See* 24 C.F.R. § 1000.318.[5] Section 1000.318 specifically provides that a dwelling unit ceases to be counted for a tribe's FCAS calculation once a tribe "no longer has the legal right to own, operate, or maintain the unit . . . whether such right is lost by conveyance, demolition, or otherwise." 24 C.F.R. § 1000.318(a). In determining the number of disqualified units, HUD relies on information provided by each Indian tribe on annual response forms.

During the years immediately following the promulgation of Section 1000.318, HUD calculated each tribe's FCAS to include all assistance-based dwelling units owned or operated by the tribe as of September 30, 1997, and only removed units from a tribe's annual calculation if HUD received notice from the tribe that a unit had been either demolished or conveyed to an Indian family. *See, e.g.,* Audit Report, Office of Inspector General (2001), p.275-279. However, in 2001,

---

[5] Section 1000.318 reads in its entirety as follows:

"§ 1000.318 When do units under Formula Current Assisted Stock cease to be counted or expire from the inventory used for the formula?

(a) Mutual Help and Turnkey III units shall no longer be considered Formula Current Assisted Stock when the Indian tribe, TDHE [tribally designated housing entity], or IHA [Indian Housing Authority] no longer has the legal right to own, operate, or maintain the unit, whether such right is lost by conveyance, demolition, or otherwise, provided that:

(1) conveyance of each mutual help or turnkey III unit occurs as soon as practicable after a unit becomes eligible for conveyance by the terms of the MHOA [Mutual Help Occupancy Agreement]; and

(2) the Indian tribe, TDHE, or IHA actively enforce strict compliance by the homebuyer with the terms and conditions of the MHOA, including the requirements for full and timely payment.

(b) Rental units shall continue to be included for formula purposes as long as they continue to be operated as low income rental units by the Indian tribe, TDHE, or IHA.

(c) Expired contract Section 8 units shall continue as rental units and be included in the formula as long as they are operated as low income rental units as included in the Indian tribe's or TDHE's Formula Response Form."

3

the Office of Inspector General ("OIG") conducted a wide-scale audit of HUD's implementation of NAHASDA, with a focus on HUD's implementation of the IHBG program. In its report, OIG criticized HUD for failing to enforce strict compliance with Section 1000.318 as written and asserted that IHBG funds had not been properly allocated in the previous fiscal years because certain tribes' FCAS calculations included housing units that no longer qualified as current assisted stock under a strict interpretation of Section 1000.318. Specifically, OIG opined that because most housing programs under the 1937 Housing Act had standardized twenty-five year lease periods, "one can reasonably expect that some of these units should be paid-off, and the [TDHEs] would no longer have the legal right to own, operate, or maintain these units." Audit Report, Office of Inspector General (2001), p.279. In the years following the OIG audit report, HUD implemented these recommendations, including the strict interpretation of Section 1000.318 for subsequent FCAS calculations. Thus, rather than only disqualifying those units for which HUD had received confirmation of conveyance by the tribe, HUD interpreted Section 1000.318 to read that all dwelling units that have reached the end of their twenty-five year lease period, whether or not they were still owned by a tribe, should be disqualified and removed from a tribe's FCAS calculation.

In early 2008, HUD conducted an audit of WRPT's IHBG funding. In the audit, HUD determined that WRPT had been overfunded in fiscal year 2008 in the amount of $110,444 due to an inflated FCAS calculation. HUD then reduced WRPT's grant for fiscal year 2009 by $110,444 in order to recapture the overpaid funds.

On November 28, 2008, WRPT initiated the present action against HUD under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, seeking a determination that HUD's promulgation and interpretation of 24 C.F.R. § 1000.318 was arbitrary and capricious. Doc. #1. On February 10, 2011, WRPT filed an amended complaint. Doc. #7. In its amended complaint, WRPT contended that the exclusion of dwelling units from the block grant formula pursuant to Section 1000.318 was in violation of the specific pre-amendment statutory language of NAHASDA, particularly 25 U.S.C. § 4152 (1996). In response to WRPT's amended complaint,

both parties filed cross-motions for summary judgment. Doc. ##18, 22.

On December 15, 2014, the court issued its order on the cross-motions for summary judgment. Doc. #45. In that order, the court found that HUD's promulgation of 24 C.F.R. § 1000.318 was within NAHASDA's mandate, and as such, was an appropriate exercise of HUD's funding authority. *Id*. However, the court also found that HUD's interpretation of Section 1000.318 to exclude certain housing units from a tribe's FCAS calculation simply because the underlying leases had passed their initial 25-year term was an arbitrary and capricious interpretation of the regulation. *Id*. Thereafter, defendants filed the present motion for reconsideration of the court's order. Doc. #48.

## II.     Discussion

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). Rule 59(e) provides that a district court may reconsider a prior order only where the court is presented with newly discovered evidence, an intervening change of controlling law, manifest injustice, or where the prior order was clearly erroneous. FED. R. CIV. P. 59(e); *see also United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Hansen v. State Farm Mut. Auto Ins., Co.* 2013 U.S. Dist. LEXIS 160457, *2 (D. Nev. 2013).

In its motion for reconsideration, defendants raise three challenges to the court's December 15, 2014 order on summary judgment. *See* Doc. #48. First, defendants contend that the court erred in finding that HUD categorically excludes all housing units that are past their initial twenty-five year lease term. *Id.* Second, defendants argue that the court erred by relying on facts that were not part of the administrative record. *Id*. Finally, defendants contend that the court's finding that HUD's interpretation of Section 1000.328 was arbitrary and capricious was improper in light of Congress' amendment of NAHASDA in 2008. *Id*. The court shall address each challenge below.

5

### A. Categorical Exclusion Language

In their motion, defendants contend that the court made an improper factual finding that HUD categorically excludes all homes past their initial twenty-five year lease period from a tribe's FCAS calculation. In particular, defendants argue that the evidence in this action establishes that HUD made a specific determination with regards to WRPT that of the 46 units past the twenty-five year lease period, 14 of those units could still be counted in WRPT's FCAS calculation because WRPT submitted documentation that there were new owners for the units extending the pay-off date for the units past the initial twenty-five year period. *See* Doc. #48. Thus, defendants argue that the record unequivocally establishes that HUD does not simply exclude *all* homes past the twenty-five year lease period and the court's finding to the contrary was in error.

Initially, the court notes that its statement that HUD's interpretation of 24 C.F.R. § 1000.318 excludes all homes past their initial twenty-five year lease period from a tribe's FCAS calculation was a background generalization setting the stage for the issues presented in this action rather than a specific factual finding of the court that HUD excludes *all* homes past their twenty-five year lease terms from a tribe's FCAS calculation. In fact, it is true that in this action HUD allowed WRPT to submit documentation that some of the excluded homes had new lease agreements with new owners. However, what is determinative to this action - and was established in the court's order - is the undisputed fact that HUD begins its FCAS calculation with the assumption that the twenty-five year lease period is a categorical cut-off point. Specifically, HUD assumes that all units past the twenty-five year lease period should not be counted as part of a tribe's FCAS calculation and only then allows the tribe to submit documentation to revisit this assumption. It is this base assumption of exclusion under Section 1000.318 that WRPT challenged and the court's order addressed. The court's single sentence outlying HUD's assumption of exclusion absent documentation to the contrary is not in error, nor does the fact that HUD allowed some homes to be considered in WRPT's FCAS calculation for fiscal year 2008 change the court's

6

order in any way. Therefore, the court finds that defendants' challenge does not warrant reconsideration of the court's order.

**B. Facts Outside the Record**

Defendants' second challenge to the court's order concerns the multiple hypothetical scenarios identified by the court to support the court's finding that HUD's exclusion of units past their twenty-five year lease period is arbitrary and capricious. In the court's order on summary judgment, the court found that HUD's interpretation of Section 1000.318 improperly "excludes units that could not be conveyed because they were undergoing federally funded repair or modernization work; excludes demolished units that were scheduled for replacement but haven't been rebuilt yet; and excludes units that were not or could not be conveyed due to title impediments." Doc. #45.  Defendants argue that because WRPT failed to raise any of these reasons before HUD, the court exceeded the scope of its judicial review and improperly considered "facts" outside the administrative record. The court disagrees.

The court notes that its reliance on additional examples of housing unit exclusions which would be improper under HUD's interpretation of Section 1000.318 was just that, a reliance on examples rather than any reliance on "facts" outside the administrative record as defendants contend. As such, defendants' challenge is without merit and has no bearing on the court's order. Nor does defendants' challenge address the key issue in this action which is that HUD begins a tribe's FCAS calculation with the assumption that homes past their twenty-five year lease periods should be excluded.

In its order, the court simply provided additional examples to show how HUD's interpretation of Section 1000.318 was arbitrary and capricious beyond those that actually occurred in this action. This is well within the court's purview. The court is allowed to consider additional examples when determining whether an agency's actions were arbitrary and capricious. Therefore, the court did not improperly rely on facts not in the administrative record.

7

### C. Amended NAHASDA

On October 14, 2008, NAHASDA was amended by the 2008 NAHASDA Reauthorization Act ("2008 Reauthorization Act"), PL 110-411, 122 Stat. 4319 (2008). Under the 2008 amendment, NAHASDA's formula allocation provision was amended to incorporate some of the language from 24 C.F.R. § 1000.318. *See* 25 U.S.C. § 4152 (2008). Now, as part of the amended allocation formula, dwelling units that are past the twenty-five year lease period, but have not been conveyed from a TDHE's ownership, are removed from a tribe's yearly FCAS calculation unless the unit could not be conveyed to the Indian family "for reasons beyond the control of the [recipient tribe.]" 25 U.S.C. § 4152(b) (2008). The amended statute further identifies what constitutes a "reason beyond the control of the [recipient tribe.]" 25 U.S.C. § 4152(d) (2008). Thus, as now amended, HUD is authorized by statute to disqualify from a tribe's FCAS calculation those dwelling units that are more than twenty-five years old but have not yet been conveyed.

In their final challenge, defendants argue that because HUD's interpretation of Section 1000.318 as it related to WRPT in fiscal year 2008 is consistent with the amended version of Section 4152 of NAHASDA, then its pre-amendment interpretation cannot be arbitrary and capricious. The court disagrees.

Initially, the court finds that the fact that Congress amended NAHASDA to specifically allow for the exclusion of units consistent with HUD's interpretation of Section 1000.318 establishes that HUD's interpretation was not proper under the pre-amendment version of the statute. If 25 U.S.C. § 4125, which § 1000.318 interprets and applies, read before amendment as it did after amendment - as defendants contend - then it would not have been necessary to amend the statute in the first place. District courts presume that Congress would not perform such a useless act as only making cosmetic amendments to a statute. *United States v. Phommachanh*, 91 F.3d 1383, 1387 (10 cir. 1996).

///

Further, the 2008 amendments made clear that the amendments would "not apply to any claim arising from a formula current assisted stock calculation or count involving an Indian housing block grant allocation for any fiscal year through fiscal year 2008." The fact that Congress drew a line between the pre-2008 version of § 4152 and the post-2008 version of the statute is a clear signal that the distinction between the two versions of the statute is material and that HUD's prior interpretation of Section 1000.318 was not consistent with the prior version of the statute. If the amendment was nothing but a clarification of existing law as defendants argue, then there would be no need for the provision permitting tribes to file suit under the pre-amendment formula allocation provision. Thus, the court finds that the 2008 amendments were far more than a cosmetic clarification of the statute as defendants contend and establish that HUD's interpretation of Section 1000.318 prior to the 2008 amendment of NAHASDA was arbitrary and capricious. Therefore, the court finds that defendants' third challenge is without merit and the court shall deny defendants' motion for reconsideration accordingly.

IT IS THEREFORE ORDERED that defendants' motion for reconsideration (Doc. #48) is DENIED.

IT IS FURTHER ORDERED that within twenty (20) days after entry of this order the parties shall file a joint status report identifying and outlining any remaining issues in this action.

IT IS SO ORDERED.

DATED this 14th day of December, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE